UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELLEY ANN BAISLEY,

                              Plaintiff,

        v.

SLADE INDUSTRIES, INC.,

                              Defendant.

No. 22-CV-3791 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Francis X. Young, Esq.
Law Offices of Francis X. Young, PLLC
White Plains, NY
*Counsel for Plaintiff*

Catherine G. Bryan, Esq.
Connell Foley LLP
Newark, NJ
*Counsel for Defendant*

Justin M. Vogel, Esq.
LeClairRyan
Newark, NJ
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

Kelley Ann Baisley ("Plaintiff") brought this Action against Slade Industries, Inc.

("Defendant") and Schindler Elevator Corporation ("SEC"), alleging that—as a result of

Defendant's and SEC's negligence—she was injured after her left foot was temporarily stuck in

the doors of a closing elevator.  (*See generally* Compl. (Dkt. No. 1-1).)[1]  Before the Court is

---

[1] Although Defendant refers to Plaintiff as "Kelly Ann Baisley," Plaintiff's papers—as
well as the docket of this over-two-year-old case—make clear that Plaintiff's first name is
"Kelley."  (*See, e.g.*, Pl's Mem. in Opp'n to Mot. ("Pl's Opp'n") 1 (Dkt. No. 60); Aff. of Francis

Defendant's Motion for Summary Judgment (the "Motion").[2]  (*See* Not. of Mot. (Dkt. No. 49).)

For the reasons explained below, Defendant's Motion is granted in part and denied in part.

I.  Background

A.  Factual Background

The following facts are taken from the Parties' statements pursuant to Local Civil Rule

56.1.  (*See* Def's Rule 56.1 Statement ("Def's 56.1") (Dkt. No. 51); Pl's Response Rule 56.1

Statement ("Pl's Resp. 56.1") (Dkt. No. 57); Pl's Rule 56.1 Statement ("Pl's 56.1") (Dkt.

No. 58); Def's Response Rule 56.1 Statement ("Def's Resp. 56.1") (Dkt. No. 63).)[3]

---

X. Young, Esq. ("Young Aff.") Ex. 7 ("Pl's Aff.") 3 (Plaintiff's affidavit, which she signed as "Kelley Ann Baisley") (Dkt. No. 59-7); *see also* Dkt.)
  Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper righthand corner of each page.

[2] The Court so-ordered the Parties stipulation of dismissal on January 30, 2023 as to SEC, a former Defendant.  (*See* Stip. of Dismissal (Dkt. No. 21).)  SEC is therefore no longer a Party to this Action.

[3] Under Local Rule 56.1, motions for summary judgment must be supported by "a separate, short[,] and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," and, for each paragraph, a "citation to evidence which would be admissible."  Local Rules of the United States District Courts for the Southern and Eastern District of New York ("Local Rules"), Rule 56.1(a). Likewise, "papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." *Id.* 56.1(b).  Each paragraph in both the movant and the non-movant's Rule 56.1 Statements "*must be followed by citation to evidence which would be admissible*." *Id.* 56(d) (emphasis added).  "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Mayagüez S.A. v. Citibank, N.A.*, No. 16-CV-6788, 2022 WL 901627, at *8 (S.D.N.Y. Mar. 25, 2022) (citation omitted).  "Accordingly, a Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*, No. 19-CV-7577, 2023 WL 2973038, at *2 (S.D.N.Y. Mar. 28, 2023) (citation omitted).
  Courts in this District have consistently "interpreted . . . Local Rule 56.1 to provide that[,] where there are no[] citations or where the cited materials do not support the factual assertions in

2

Additionally, where necessary, the Court cites directly to the admissible evidence submitted by the Parties.

The facts are recounted "in the light most favorable to" Plaintiff, the non-movant. *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021). The facts as described below are undisputed unless otherwise noted.

---

the Statements, the [c]ourt is free to disregard the assertion." *Nat'l Coal. on Black Civic Participation v. Wohl*, 661 F. Supp. 3d 78, 107 (S.D.N.Y. 2023) (internal quotation marks and citation omitted) (collecting cases); *accord Bank of Am., N.A. v. Greuner Med. P.C.*, No. 22-CV-9620, 2024 WL 182408, at *2 (S.D.N.Y. Jan. 17, 2024); *AL Infinity, LLC v. Crown Cell, Inc.*, No. 20-CV-4813, 2023 WL 5097979, at *3 (S.D.N.Y. Aug. 9, 2023); *Ajaero v. S&P Glob. Inc.*, No. 21-CV-7894, 2023 WL 2390723, at *7 (S.D.N.Y. Mar. 7, 2023); *Nowlin v. Mount Sinai Health Sys.*, No. 20-CV-2470, 2022 WL 992829, at *1 n.1 (S.D.N.Y. Mar. 31, 2022); *see also Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (disregarding the plaintiff's responses to the defendants' Rule 56.1 statement where the plaintiff, inter alia, "frequently fail[ed] to refer to any evidence in the record to support her contention that certain facts [were] disputed"). Accordingly, the Court will deem admitted any paragraphs that the Parties fail to dispute with a corresponding citation to admissible evidence.

Courts in the Second Circuit also regularly deem facts admitted where a party fails to specifically controvert a statement in its denial. *See, e.g.*, *Scarpinato v. 1770 Inn, LLC*, No. 13-CV-955, 2015 WL 4751656, at *2 n.3 (E.D.N.Y. Aug. 11, 2015) ("[A]ny of the [d]efendants' Rule 56.1 statements that are not specifically controverted are deemed admitted."). The Court will thus deem facts admitted where the Parties fail to specifically controvert a statement in its purported denial.

Moreover, it is common practice to deem a fact admitted where a party's denial is based on mere semantic complaints as to the wording or characterization of the statement. *See Arch Specialty Ins. Co. v. TDL Restoration, Inc.*, No. 18-CV-6712, 2021 WL 1225447, at *1 n.1 (S.D.N.Y. Mar. 31, 2021) ("Where the [p]arties identify disputed facts but with semantic objections only or by asserting irrelevant facts, [the Court will not consider] these purported disputes, which do not actually challenge the factual substance described in the relevant paragraphs, . . . as creating disputes of fact.") (collecting cases); *see also Droplets, Inc. v. E*TRADE Fin. Corp.*, No. 12-CV-2326, 2015 WL 1062670, at *4 (S.D.N.Y. Mar. 9, 2015) (explaining that a denial founded on the fact that the party's statement of fact paraphrases the underlying evidence does not create a dispute of fact where the denial fails to "suggest [the party] erroneously, inaccurately or . . . misleadingly characterized" the evidence). The Court will therefore deem a fact admitted where the Parties' denials are based on a challenge to the wording of the statement, or where they object to the paraphrasing of underlying evidence or testimony but fail to cite facts that indicate that characterization is misleading.

### 1. The Elevator

This case arises out of Plaintiff's allegations that she was injured on January 23, 2019 while getting on an elevator (the "Elevator") in the building located at 85 Court Street in White Plains, NY.  (*See* Decl. of Catherine G. Bryan, Esq. ("Bryan Decl.") Ex. C at 3 (Dkt. No. 52-3); *see also id.* Ex. D ("Pl's Dep. Tr.") at 21:14–22:3 (Dkt. No. 52-4).)[4]

Originally installed by non-party Dover Elevator, the Elevator was modernized by non-party Brink Elevator in 2001.  (Def's 56.1 ¶ 20; Pl's Resp. 56.1 ¶ 20.)  The Elevator is a "center parting" elevator, meaning that its doors open and close from the left and right sides, and that they meet in the middle when closed.  (Def's 56.1 ¶ 13; Pl's Resp. 56.1 ¶ 13.)  Among the Elevator's features is a "door re[-]opening device," which functions to re-open the doors in the event that the doors become obstructed.  (Def's 56.1 ¶ 14; Pl's Resp. 56.1 ¶ 14.)[5]  Basically, the door re-opening device emits an electronic beam of light that runs vertically from one door to the other, and when that light is obstructed as the doors are closing—by an entering or exiting passenger, for example—the device re-opens the doors.  (*See* Def's 56.1 ¶¶ 14, 16–18; Pl's Resp. 56.1 ¶¶ 14, 16–18.)

### 2. The January 23, 2019 Incident

On January 23, 2019, Plaintiff was an employee of the Westchester County Department of Social Services, working out of the building located at 85 Court Street in White Plains.  (*See*

---

[4] The Court will refer to this incident as the "January 23, 2019 Incident."  In addition, citations to deposition transcripts cite the internal page and line numbers therein.

[5] As part of its 2001 modernization work, non-party Brink Elevator installed a "Tri-Tronics Leading Edge" door re-opening device to the Elevator.  (Def's 56.1 ¶ 21; Pl's Resp. 56.1 ¶ 21.)

For the avoidance of any doubt, the Court notes that, in her Opposition, Plaintiff tends to refer to the door re-opening device as the "sensor array," which the Court understands to be a part of the door re-opening device.  (*See generally* Pl's Opp'n.)

Pl's Dep. Tr. at 18:6–18.)  At approximately 3:00 p.m., Plaintiff was on the third floor of that

building, waiting for the Elevator and talking to a supervisor about "supplies."  (*Id.* at 23:4–6,

24:2–5, 31:19–25.)[6]  She was standing about one to two feet away from the Elevator's doors,

with her body facing the Elevator and her head turned over her right shoulder so that she could

speak with the supervisor, who was standing behind her.  (*Id.* at 31:2–25, 32:16–18; *see also*

Def's 56.1 ¶¶ 4–5; Pl's Resp. 56.1 ¶¶ 4–5.)

  When the Elevator arrived, Plaintiff paused briefly before entering, as she was still

speaking with the supervisor.  (*See* Pl's Dep. Tr. at 31:19–25; Def's 56.1 ¶ 5; Pl's Resp. 56.1

¶ 5.)  As the doors began to close—and while she continued speaking with the supervisor—

Plaintiff proceeded to enter the Elevator.  (*See* Pl's Dep. Tr. 38:25–39:3; Def's 56.1 ¶¶ 6–7; Pl's

Resp. 56.1 ¶¶ 6–7.)[7]  However, as she was entering the Elevator, the doors closed on the front

part of her left foot.  (*See* Pl's Dep. Tr.at 29:3–30:8; *see also id.* at 38:19–24 (Plaintiff's

deposition testimony that the Elevator's doors caught her left foot "at the toe area and the high

part . . . right prior to the beginning of [her] arch").)  Other than her left foot, no other part of

Plaintiff's body touched the Elevator's doors as they closed.  (Def's 56.1 ¶ 8; Pl's Resp. 56.1

¶ 8.)  At that point, Plaintiff's foot became stuck in the Elevator's doors, where it was trapped

until she fell backwards onto the floor outside of the Elevator, landing on her right side.  (*See*

Pl's Dep. Tr. at 37:6–19; *see also id.* at 21:24–22:3 (Plaintiff deposition testimony that her left

foot "was caught in [the E]levator[;] . . . [the E]levator['s] doors wouldn't release [her] left foot

and [she] was thrown backward[] on [her] right side"); Def's 56.1 ¶ 3; Pl's Resp. 56.1 ¶ 3.)

---

  [6] At that time, Plaintiff was holding office supplies for her unit in her arms—specifically, pencils, pens, and highlighters.  (Pl's Dep. Tr. at 28:5–14.)

  [7] Plaintiff testified that she was aware the doors were beginning to close as she entered the Elevator.  (Pl's Dep. Tr. at 39:21–23.)

As a result of the January 23, 2019 Incident, Plaintiff asserts that she injured her right knee and right shoulder.  (Def's 56.1 ¶ 72; Pl's Resp. 56.1 ¶ 72.)  It is undisputed that Plaintiff had right knee surgery on May 22, 2020, and right shoulder surgery on June 8, 2020.  (Def's 56.1 ¶¶ 73, 75; Pl's Resp. 56.1 ¶¶ 73, 75.)

### 3.  Defendant's Maintenance of the Elevator

During the relevant time period, Defendant was the elevator maintenance contractor for the elevators at 85 Court Street.  (Def's 56.1 ¶ 9; Pl's Resp. 56.1 ¶ 9.)[8]  More specifically, its maintenance contract for those elevators commenced less than one year before the January 23, 2019 Incident, on February 15, 2018.  (Def's 56.1 ¶ 10; Pl's Resp. 56.1 ¶ 10.)  On January 8, 2018, just prior to the commencement of Defendant's maintenance contract, non-party Savkom, Inc.—an independent inspection agency—tested the Elevator and determined that its doors, door operation, and door re-opening device were fully code complaint.  (Def's 56.1 ¶ 30.)[9]  Between the commencement of Defendant's maintenance contract on February 15, 2018 and the January 23, 2019 Incident, Defendant performed preventative maintenance on the Elevator eight times, including eight days before the January 23, 2019 Incident, on January 15, 2019.  (Def's 56.1 ¶ 31; Pl's Resp. 56.1 ¶ 31.)  During that same time period, there were only two service calls made concerning the Elevator—one on May 11, 2018 when the Elevator was skipping floors,

---

[8] In addition to the Elevator, there is one other elevator in the building at 85 Court Street. (Def's 56.1 ¶ 11; Pl's Resp. 56.1 ¶ 11.)

[9] Plaintiff failed to respond this paragraph of Defendant's Rule 56.1 Statement.  (*See* Pl's Resp. 56.1 ¶ 30.)  Because she has not specifically controverted this paragraph, the Court deems it admitted.  *See Scarpinato*, 2015 WL 4751656, at *2 n.3 ("[A]ny of the [d]efendants' Rule 56.1 statements that are not specifically controverted are deemed admitted.")

and the other on October 12, 2018 when the Elevator had been set to "fire service."  (Def's 56.1 ¶ 32; Pl's Resp. 56.1 ¶ 32.)[10]

Non-party Luis Melendez worked for Defendant and was the mechanic assigned to repair and maintain the elevators at 85 Court Street during the relevant time period.  (Def's 56.1 ¶ 33; Pl's Resp. 56.1 ¶ 33.)  Prior to the January 23, 2019 Incident, he was not aware of any issues or problems with the opening or closing of the Elevator.  (Def's 56.1 ¶ 33; Pl's Resp. 56.1 ¶ 33.)  Indeed, the only time Melendez ever had to perform maintenance on the Elevator's door re-opening device was three years *after* the January 23, 2019 Incident, in 2022.  (Def's 56.1 ¶ 34; Pl's Resp. 56.1 ¶ 34.)[11]

### 4.  Expert Opinions

As relevant here, both Plaintiff and Defendant have proffered the opinions of liability experts in this case.  Plaintiff's proffered expert, Dr. James Pugh, Ph.D., P.E., concluded that "[t]he cause of the accident was defective mounting of the sensor array for the [door re-opening device] and/or failure to install an available proximity detector as mandated by [certain American Society of Mechanical Engineers ("ASME")] requirements."  (Bryan Decl. Ex. L ("Pugh Aff.") at 5 (Dkt. No. 52-12).)  With respect to the purportedly defective mounting, Dr. Pugh opined that the door re-opening device's sensor array was installed too high, as an installation manual (the "Installation Manual") states that the "arrays must be 1/4" up from the door sill," but he measured the Elevator's array as being "approximately 1 5/8 inches above the

---

[10] It is undisputed that there were no service calls made to Defendant relating to the Elevator's doors, door operation, or door re-opening device prior to the January 23, 2019 Incident.  (Def's 56.1 ¶ 32; Pl's Resp. 56.1 ¶ 32.)

[11] The Court also notes that, although she had worked at 85 Court Street since 2017, Plaintiff was not aware of anyone else getting injured by the Elevator prior to the January 23, 2019 Incident.  (Def's 56.1 ¶ 35; Pl's Resp. 56.1 ¶ 35.)

sill." (*Id.* at 4–5; Young Aff. Ex. 3 ("Installation Manual") at 5 (Dkt. No. 59-3).)  Notably, Dr. Pugh did not obtain the Installation Manual from the manufacturer of the door re-opening device, Tri-Tronics; instead, he "Googled the model of the sensor and it provided the link to [the] document [he relied upon,]" "guess[ed]" that it came from the Tri-Tronics website, and thought that it was "probable" that the document he found, "or something very similar to it," was available when the Elevator's door re-opening device was installed in 2001, notwithstanding the fact that the document states "Copyright 2011."  (Bryan Decl. Ex. N ("Pugh Dep. Tr.") at 50:1–51:1 (Dkt. No. 52-14); *see also* Installation Manual at 17.)  As to the latter part of his conclusion regarding proximity detectors, Dr. Pugh based that opinion on "ASME A17.1-2019."  (Pugh Aff. at 4.)  However, it is undisputed that that provision did not go into effect until June 2020, well after the January 23, 2019 Incident, and that it has never been adopted as a requirement in New York.  (Def's 56.1 ¶¶ 59–60; Pl's Resp. 56.1 ¶¶ 59–60.)

Defendant has proffered Jon. B. Halpern, P.E., as its liability expert.  (*See* Bryan Decl. Ex. O ("Halpern Rep.") (Dkt. No. 52-15).)  Mr. Halpern concluded, among other things, that: the Elevator "had a door re-opening device that was fully code compliant"; that "[n]o failure to maintain the elevator on behalf of [Defendant] caused or contributed to the [January 23, 2019 Incident]"; and "Plaintiff failed to take the proper care while entering the elevator, and such was the sole cause of the [January 23, 2019 Incident]."  (*Id.* at 10–11.)

Finally, Plaintiff has proffered the opinion of her medical expert—and treating physician—Dr. John Galeno, M.D.  (*See* Bryan Decl. Ex. Q (Dkt. No. 52-17).)  Dr. Galeno opined that the January 23, 2019 Incident caused injuries to her right knee and right shoulder.  (*See id.* at 4; *see also* Def's 56.1 ¶¶ 74, 76; Pl's Resp. 56.1 ¶¶ 74, 76.)

### B.  Procedural History

Plaintiff filed suit against Defendant and SEC in state court on or around October 21, 2021.  (*See* Compl.)  Thereafter, Defendant and SEC removed the case to federal court—where it was assigned to another judge in this District—and ultimately filed an Answer on January 6, 2022.  (*See generally* Answer (Dkt. No. 1-2).)  On January 10, 2022, that court remanded the case back to state court in light of Defendant and SEC's failure to satisfy their burden of establishing that the amount in controversy exceeded $75,000.  (*See* Order 4 (Dkt. No. 1-3).)  After Defendant and SEC cured that jurisdictional defect, (*see* Response to Demand for Ad Damnum (explaining that Plaintiff seeks $3,000,000 in damages) (Dkt. No. 1-4)), Defendant and SEC again removed this case to federal court on May 10, 2022, (*see* Not. of Removal (Dkt. No. 1)), where it was assigned to this Court, (*see generally* Dkt.).[12]  As noted above, Plaintiff voluntarily dismissed SEC from this case without prejudice, effective January 30, 2023.  (*See* Stip. of Dismissal.)

On September 21, 2023, in advance of the close of discovery, Defendant filed a pre-motion letter seeking leave to move for summary judgment.  (*See* Letter from Catherine G. Bryan, Esq. to Court (Sept. 21, 2023) (Dkt. No. 44).)  Plaintiff did not file a response.  (*See generally* Dkt.)  The Court held a pre-motion conference on October 12, 2023.  (*See* Dkt. (minute entry for Oct. 12, 2023).)  On November 17, 2023, the Parties filed a joint status update, which included a proposed briefing schedule for the instant Motion.  (*See* Letter from Catherine G. Bryan, Esq. to Court (Nov. 17, 2023) (Dkt. No. 47).)  The Court adopted that briefing schedule on November 20, 2023.  (*See* Memo Endorsement (Dkt. No. 48).)

---

[12] It is undisputed that the Court has subject matter jurisdiction over this diversity case. *See* 28 U.S.C. § 1332(a).

Pursuant to that briefing schedule, Defendant filed its Motion on January 31, 2024.  (*See*

Not. of Mot.; Def's Mem. of Law in Supp. of Mot. ("Def's Mem.") (Dkt. No. 50); Def's 56.1;

Bryan Decl. (Dkt. No. 52); Proposed Order (Dkt. No. 53).)  Following a request for an extension

to the applicable Opposition and Reply deadlines, which the Court granted, (*see* Dkt. Nos. 55–

56), Plaintiff filed her Opposition to Defendant's Motion on March 5, 2024, (*see* Pl's Resp. 56.1;

Pl's 56.1; Young Aff. (Dkt. No. 59); Pl's Opp'n.)  On March 22, 2024, Defendant filed its Reply.

(*See* Def's Reply Mem. of Law in Supp. of Mot. ("Def's Reply") (Dkt. No. 62); Def's Resp.

56.1.)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (same); *Truitt v.

Salisbury Bank & Tr. Co.*, 52 F.4th 80, 85 (2d Cir. 2022) (same); *Cambridge Funding Source

LLC v. Emco Oilfield Servs. LLC*, No. 22-CV-10741, 2023 WL 7405862, at *4 (S.D.N.Y. Nov.

9, 2023) (same).  "In deciding whether to award summary judgment, the court must construe the

record evidence in the light most favorable to the non-moving party and draw all reasonable

inferences in [her] favor."  *Torcivia*, 17 F.4th at 354; *see also Horror Inc. v. Miller*, 15 F.4th 232,

240 (2d Cir. 2021) (same).  "The movant 'bears the initial burden of showing that there is no

genuine dispute as to a material fact.'"  *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d

Cir. 2022) (quoting *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018)); *see also LaFontant v. Mid-

Hudson Forensic Psychiatric Ctr.*, No. 18-CV-23, 2023 WL 6610764, at *7 (S.D.N.Y. Oct. 10,

2023) (same); *Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration adopted) (internal quotation marks and citation omitted); *see also U.S. Bank Nat'l Ass'n as Tr. for Reg. Holders of J.P. Morgan Chase Com. Mortg. Sec. Corp., Multifamily Mortg. Pass-Through Certificates, Series 2017-SB42 v. 160 Palisades Realty Partners LLC*, No. 20-CV-8089, 2022 WL 743928, at *3 (S.D.N.Y. Mar. 10, 2022) (same). Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that [her] allegations were correct; [she] need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)); *see also Jennifer Fung-Schwartz, D.P.M, LLC v. Cerner Corp.*, No. 17-CV-233, 2023 WL 6646385, at *3 (S.D.N.Y. Oct. 12, 2023) (same), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Kollias v. Univ. of Rochester*, No. 18-CV-6566, 2023 WL 5608868, at *4 (W.D.N.Y. Aug. 30, 2023) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely

rest on the allegations or denials of [her] pleading." (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009))).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Seward v. Antonini*, No. 20-CV-9251, 2023 WL 6387180, at *12 (S.D.N.Y. Sept. 29, 2023) (quoting *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014)). "At this stage, 'the role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'" *U.S. Sec. & Exch. Comm'n v. Amah*, No. 21-CV-6694, 2023 WL 6386956, at *8 (S.D.N.Y. Sept. 28, 2023) (alteration adopted) (quoting *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011)). Therefore, "a court's goal should be 'to isolate and dispose of factually unsupported claims.'" *Sullivan v. Nat'l Express LLC*, No. 21-CV-5789, 2023 WL 6279255, at *8 (S.D.N.Y. Sept. 26, 2023) (quoting *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp.*, 477 U.S. at 323–24)).

When ruling on a motion for summary judgment, a district court should "consider only evidence that would be admissible at trial." *Latimer v. Annucci*, No. 21-CV-1275, 2023 WL 6795495, at *3 (S.D.N.Y. Oct. 13, 2023) (citing *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998)). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Mozzochi v. Town of Glastonbury*, No. 21-CV-1159, 2023 WL 3303947, at *3 (D. Conn. May 8, 2023) (quoting *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012)); *accord* Fed. R. Civ. P.56(c)(4); *see also E. Fishkill Fire Dist. v. Ferrara Fire Apparatus, Inc.*, No. 20-CV-576, 2023 WL 6386821, at *11 (S.D.N.Y. Sept. 28, 2023) ("Rule 56 requires a

motion for summary judgment to be supported with affidavits based on personal knowledge

. . . ." (internal citation omitted)); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014)

(disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v.

Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for

admissibility is whether a reasonable trier of fact could believe the witness had personal

knowledge." (internal citation omitted)).

 "As a general rule, 'district courts may not weigh evidence or assess the credibility of

witnesses at the summary judgment stage.'" *Parker v. Fantasia*, 425 F. Supp. 3d 171, 183

(S.D.N.Y. 2019) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005)); *see

also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (noting that at the summary

judgment stage, the court is not to "weigh the evidence and determine the truth of the matter");

*Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and

choices between conflicting versions of the events are matters for the jury, not for the court on

summary judgment." (quotation marks omitted)).  Where the evidence presents "a question of

'he said, she said'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v.

Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010); *see also Kassel v. City of

Middletown*, 272 F. Supp. 3d 516, 535 (S.D.N.Y. 2017) (noting that "it is not the role of the

[c]ourt at summary judgment to resolve [a] factual clash").

 However, although witness credibility is usually a question of fact for the jury, *Yu Zhang

v. Sabrina USA Inc.*, No. 18-CV-12332, 2021 WL 1198932, at *3 (S.D.N.Y. Mar. 30, 2021),

"[b]road, conclusory attacks on the credibility of a witness without more [are] insufficient to

raise a genuine issue of material fact that would defeat a motion for summary judgment," *Sec.

& Exch. Comm'n v. Airborne Wireless Network*, No. 21-CV-1772, 2023 WL 5938527, at *6

(S.D.N.Y. Sept. 12, 2023) (internal quotation marks and citation omitted); *see also Ezuma v. City Univ. of N.Y.*, 665 F. Supp. 2d 116, 128 (E.D.N.Y. 2009) ("If the moving party has made a properly supported motion for summary judgment, the plaintiff may not respond simply with general attacks upon the defendant's credibility." (alterations adopted) (internal citation omitted)).  Thus, "when opposing a motion for summary judgment, the non-moving party may not respond simply with general attacks upon the declarant's credibility, but rather must identify affirmative evidence from which a jury could find that the non-moving party has carried its burden of proof." *Moritz v. Town of Warwick*, No. 15-CV-5424, 2017 WL 4785462, at *8 (S.D.N.Y. Oct. 19, 2017) (alterations adopted) (internal quotation marks and citation omitted); *see also Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 181 (E.D.N.Y. 2015) ("'Although credibility assessments are improper on a motion for summary judgment,' a court may be justified in dismissing a claim when the 'plaintiff's version of the events is in such discord with the record evidence as to be wholly fanciful.'" (quoting *Pulliam v. Lilly*, No. 07-CV-1243, 2010 WL 935383, at *5 (E.D.N.Y. Mar. 11, 2010))).

    B.  Analysis

    In connection with the January 23, 2019 Incident, Plaintiff brings a negligence claim against Defendant, asserting that the Elevator's door re-opening device was improperly installed, which resulted in her injuries.  (*See generally* Compl.; *see also* Pl's Opp'n 6–7.)  Defendant contends that summary judgment in its favor on Plaintiff's negligence claim is appropriate because Plaintiff cannot establish that a dangerous condition existed in the Elevator such that Defendant violated any duty owed to her.  (Def's Mem. 11–15.)  In addition, Defendant asserts that—even assuming that there was a dangerous condition—summary judgment is appropriate because it did not have actual or constructive notice of such a condition.  (*Id.* at 15–19.)

14

Case 7:22-cv-03791-KMK-VR   Document 66   Filed 06/13/24   Page 15 of 36

Defendant further argues that it is entitled to summary judgment because Plaintiff cannot rely upon a res ipsa loquitur theory to establish her negligence claim. (*See id.* at 20–23.)[13] Finally, Defendant argues that Plaintiff cannot establish that her right knee and right shoulder injuries are causally related to the January 23, 2019 Incident. (*Id.* at 24–27.)

With respect to each of those arguments, Plaintiff counters that there are issues of material fact that preclude summary judgment because, viewing the evidence in the light most favorable to Plaintiff: (1) the Elevator's door re-opening device was not installed in accordance with the manufacturer's installation requirements, (Pl's Opp'n 12–14); (2) Defendant knew or should have known that the door re-opening device was installed incorrectly, (*id.* at 14–16); (3) Plaintiff is entitled to rely on a res ipsa loquitur theory in connection with her negligence claim, (*id.* at 16–17); and (4) Plaintiff can demonstrate that her alleged right knee and right shoulder injuries are casually related to the January 23, 2019 Incident, (*id.* at 17–24).

The Court will address the Parties arguments only to the extent necessary to resolve the instant Motion.

### 1. Breach of Defendant's Duty of Care

Under New York law, a plaintiff seeking to establish a traditional negligence claim must demonstrate "that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the defendant's breach caused the plaintiff's injuries; and (4) the plaintiff suffered damages." *Swanson v. Schindler Elevator Corp.*, No. 21-CV-10306, 2024 WL 967331, at *4 (S.D.N.Y. Mar. 6, 2024); *accord Pasternack v. Lab'y Corp. of Am. Holdings*, 59 N.E.3d 485,

---

[13] Although the Parties use differing spellings of the phrase "res ipsa loquitur," (*see* Def's Mem. (generally using the spelling "re ipsa loquitor [sic]"); Pl's Opp'n (using the spelling "res ipsa loquitur")), the Court will proceed by using the correct spelling of that phrase, *see* Res Ipsa Loquitur, Black's Law Dictionary (11th ed. 2019).

490 (N.Y. 2016); *Ulerio v. Schindler Elevator Corp.*, No. 12-CV-1496, 2014 WL 1303710, at *3 (S.D.N.Y. Mar. 26, 2014) (citing, inter alia, *Akins v. Glens Falls City Sch. Dist.*, 424 N.E.2d 531, 535 (N.Y. 1981)).[14]  Importantly, "[a]n elevator company[, like Defendant,] that has agreed to maintain an elevator in safe working condition owes a duty of maintenance, and can be liable to a passenger for 'failure to correct conditions of which it ha[d] knowledge,' or 'failure to use reasonable care to discover and correct a condition which it ought to have found.'"  *Ulerio*, 2014 WL 1303710, at *4 (second alteration in original) (quoting *Rogers v. Dorchester Assocs.*, 300 N.E.2d 403, 405–06 (N.Y. 1973)); *see also Swanson*, 2024 WL 967331, at *4 (same).

However, "[s]uch a company may establish prima facie entitlement to summary judgment by presenting competent evidence in admissible form showing that the elevator was functioning properly before and after the accident, and that, even if a defect existed, the company did not have actual or constructive notice of any such defect."  *Swanson*, 2024 WL 967331, at *4 (alteration adopted) (italics and quotation marks omitted); *see also Green v. Schindler Elevator Corp.*, No. 19-CV-4677, 2022 WL 4484542, at *4 (S.D.N.Y. Sept. 27, 2022) (same).  "Once an elevator company makes this prima facie showing, the plaintiff must come forward with evidence capable of showing that the defendant either: (1) created the defect; or (2) had actual or constructive notice of the defect."  *Meade v. Otis Elevator Co.*, No. 15-CV-4822, 2017 WL

---

[14] "In a diversity of citizenship case, state law . . . applies to substantive issues, and federal law applies to procedural issues."  *Sarkees v. E. I. Dupont De Nemours & Co.*, 15 F.4th 584, 588 (2d Cir. 2021).  Here, the events at issue occurred in New York, *see supra* Sections I.A.1–2, and the Parties have relied exclusively on New York law in their papers, (*see generally* Def's Mem. Pl's Opp'n; Def's Reply).  Thus, the Court will apply the substantive law of New York.  *Livecchi v. Otis Elevator Co.*, No. 18-CV-333, 2024 WL 1344789, at *6 n.10 (W.D.N.Y. Mar. 30, 2024) (applying "the substantive law of the State of New York" in a case where "the incident at issue occurred . . . in New York, and both sides have relied on New York case law in arguing for and against summary judgment"); *see also Ulerio*, 2014 WL 1303710, at *3 n.3 (same).

6509259, at *6 (S.D.N.Y. Dec. 18, 2017) (italics and quotation marks omitted); *accord Swanson*, 2024 WL 967331, at *4; *Skidd v. JW Marriot Hotels & Resorts*, No. 06-CV-1554, 2010 WL 2834890, at *4 (S.D.N.Y. July 8, 2010) (citing *Pianforini v. Kelties Bum Steer*, 685 N.Y.S.2d 804, 805 (App. Div. 1999)).

As relevant here, "[t]o prove actual notice, [a] plaintiff must present proof that [the] defendants were, in fact, aware of the dangerous condition." *Ghali v. Wal-Mart Stores E., LP*, No. 18-CV-2495, 2019 WL 1745704, at *6 (S.D.N.Y. Apr. 18, 2019) (quoting *Castellanos v. Target Dep't Stores, Inc.*, No. 12-CV-2775, 2013 WL 4017166, at *4 (S.D.N.Y. Aug. 7, 2013)). "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Id.* at *7 (quoting *Gordon v. Am. Museum of Nat'l History*, 492 N.E.2d 774, 775 (N.Y. 1986)).

To establish that it is entitled to summary judgment, Defendant has pointed to undisputed evidence that an independent inspection agency tested the Elevator on January 8, 2018—shortly before Defendant's maintenance contract went into effect and just over a year before the January 23, 2019 Incident—and concluded that the Elevator's doors, door operation, and door re-opening device were fully code complaint. (*See* Def's 56.1 ¶ 30.)  In addition, after Defendant's maintenance contract went into effect, Defendant performed preventative maintenance on the Elevator on eight occasions, including just eight days before the January 23, 2019 Incident, on January 15, 2018.  (Def's 56.1 ¶ 31; Pl's Resp. 56.1 ¶ 31.)  Notably, Defendant's Dispatch Tickets produced during discovery relating to those maintenance dates reflect no issues with the Elevator's doors.  (*See* Bryan Decl. Ex. H at 5–11 (Dkt. No. 52-8); *see also id.* Ex. G at 8–12 (Defendant's Building Dispatch Statement for 85 Court Street, which likewise does not reflect

any issues with the Elevator's doors) (Dkt. No. 52-7).)  Indeed, shortly after the January 23, 2019

Incident, on January 31, 2019, Defendant performed another round of preventative maintenance

at 85 Court Street, but did not identify any issues with the Elevator or its doors.  (*See id.* Ex. G at

8; *see also id.* Ex. I at 90:14–23 (Melendez's deposition testimony affirming that Defendant

conducted "routine maintenance" at 85 Court Street on January 31, 2019) (Dkt. No. 52-9).)

Defendant also points to undisputed evidence that between February 15, 2018 and January 23,

2019, Defendant only received two service calls regarding the Elevator, and that neither of those

calls related to the Elevator's doors.  (Def's 56.1 ¶ 32; Pl's Resp. 56.1 ¶ 32.)  Finally,

Defendant's mechanic assigned to work on the Elevator, Melendez, testified that he was unaware

of any problems with the Elevator's doors prior to the January 23, 2019 Incident and that he did

not perform any sort of maintenance on the Elevator's door re-opening device until 2022, well

after the time period at issue.  (Def's 56.1 ¶¶ 33–34; Pl's Resp. 56.1 ¶¶ 33–34.)[15]  Based upon

this undisputed evidence, the Court concludes that Defendant has made a prima facie showing

that the Elevator was working properly before and after the January 23, 2019 Incident and that it

did not have actual or constructive notice of any such defect.  *See Swanson*, 2024 WL 967331, at

*4 (concluding that the defendant had "made a prima facie showing that [an] elevator was

functioning properly before and after [an] accident[,]" and that defendant did not have

constructive notice of an alleged defect, because an elevator mechanic "conducted a preventive

inspection just six days before [the plaintiff's] accident and discovered no [relevant] issues" and

that mechanic "testified that he had no recollection of any accidents due to [the alleged defect

during the month the accident at issue occurred]" (italics omitted)); *Santoni v. Bertelsmann*

---

[15] It also bears reiterating that Plaintiff was not aware of anyone else injured by the
Elevator in the approximately two years she worked at 85 Court Street before the January 23,
2019 Incident.  (Def's 56.1 ¶ 35; Pl's Resp. 56.1 ¶ 35.)

*Prop., Inc.*, 800 N.Y.S.2d 676, 677–78 (App. Div. 2005) (reversing the trial court's denial of a

motion for summary judgment on notice grounds in a case involving allegations that the plaintiff

was struck by a malfunctioning elevator door, where the defendant adduced evidence that "no

other complaints, calls, shutdowns or problems regarding the subject elevator occurred the day

before, the day of[,] or the day after the [alleged] incident" and the elevator received regular

maintenance checks and inspections during which no relevant problems were identified).[16]

       Thus, to avoid summary judgment, Plaintiff must put forth admissible evidence that

Defendant "either: (1) created the defect; or (2) had actual or constructive notice of the defect."

*Meade*, 2017 WL 6509259, at *6 (quotation marks omitted); *Swanson*, 2024 WL 967331, at *4

(same). Plaintiff does not appear to argue that Defendant created the alleged defect—i.e., that it

improperly installed the Elevator's door re-opening device. (*See* Pl's Opp'n 12–16.) And

although she appears to assert that Defendant "knew" of this alleged defect, (*id.* at 14), Plaintiff's

arguments are best construed as asserting that Defendant had *constructive* notice of the alleged

defect, (*see id.* at 14–16). Indeed, Plaintiff points to no evidence at all in support of the

contention that Defendant "w[as], in fact, aware" that the Elevator's door re-opening device was

purportedly installed incorrectly. *Ghali*, 2019 WL 1745704, at *6 (explaining that a defendant

"is held to be aware of [a dangerous] condition" for purposes of establishing actual notice if it

"has either created the condition or has received reports or complaints from others about the

---

[16] It appears that Plaintiff seeks to distinguish *Santoni* by arguing that, while that case stands for the proposition that inspections before and after an accident that reveal no defects can undermine subsequent assertions that a defendant had constructive notice of such defects, this case is different because she argues that the Elevator's door re-opening device was improperly installed, not "non-functional." (Pl's Opp'n 16.) The Court finds Plaintiff's cursory argument, which lacks citation to any pertinent legal authority or record evidence, to be unconvincing, particularly given that she fails to provide any principled reason why the reasoning in cases like *Santoni* should not be applicable where, as here, near-in-time inspections do not uncover alleged installation defects.

condition" (alteration adopted) (citation omitted)).[17]  Accordingly, the reminder of this portion of the Court's analysis will focus on the issue of constructive notice.

"Constructive notice arises when the defendant should have known of the defect as a result of [a] condition's manifest nature and the length of time [it] was in existence prior to the accident." *Castellanos*, 2013 WL 4017166, at *5 (alteration adopted) (quotation marks omitted). "[I]n cases where the plaintiff is unable to establish how long the condition causing the accident existed prior to the accident, courts have entered summary judgment in favor of the defendant." *Stephanides v. BJ's Wholesale Club, Inc.*, No. 12-CV-83, 2013 WL 1694901, at *5 (E.D.N.Y. Apr. 18, 2013) (collecting cases); *see also Early v. Hilton Hotels Corp.*, 904 N.Y.S.2d 367, 369 (App. Div. 2010) ("The absence of evidence demonstrating how long a condition existed prior to a plaintiff's accident constitutes a failure to establish the existence of constructive notice as a matter of law[.]").

Here, Plaintiff's argument appears to be that Defendant was on constructive notice as to the alleged defect because it should have known that the door re-opening device was not installed to the specifications set forth in the Installation Manual.  (*See* Pl's Opp'n 14–15.)  More specifically, although most of her assertions have no corresponding citations to record evidence, Plaintiff relies upon the text of the Installation Manual, as well as Dr. Pugh's statements to the effect that Defendant "should have noticed that the [door re-opening device] was mounted too high . . . and should have corrected th[at] defect."  (Pugh Aff. at 4; *see also* Bryan Decl. Ex. M ("Pugh Supp. Ltr.") at 4 (opining that Defendant's "repairperson [was] ignorant of [the door re-

---

[17] Plaintiff does baldly assert that "Melendez was aware that there were requirements in the Installation Manual concerning the positioning of" the door re-opening device, but she cites to nothing in the record to support that assertion and, in any event, goes on to argue that Melendez did *not* know what those requirements were.  (Pl's Opp'n 14–15.)

opening device's] installation specifications, which thus prevent[ed him] from identifying the defect and correcting it") (Dkt. No. 52-13).)

As an initial matter, and as Defendant notes, Plaintiff has failed to authenticate the Installation Manual.  (*See* Def's Reply 7.)  District courts deciding motions for summary judgment should "consider only evidence that would be admissible at trial."  *Latimer*, 2023 WL 6795495, at *3 (citing *Nora Beverages, Inc.*, 164 F.3d at 746); *see also* Local Rule 56.1(d) (requiring that each paragraph in both the movant and the non-movant's Rule 56.1 Statements "be followed by citation to evidence which would be admissible").  The authenticity of proffered evidence "is a condition precedent to admissibility."  *Platt v. Michaan*, — F. Supp. 3d —, 2023 WL 6292770, at *11 (S.D.N.Y. Sept. 27, 2023).  "To satisfy the requirement of authenticating . . . an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  The authenticity requirement in the Federal Rules of Evidence can be satisfied by, among other things, the testimony of a witness with the requisite knowledge that "an item is what it is claimed to be."  *Id.* 901(b)(1).

In his Opposition papers, Plaintiff does not even attempt to establish the authenticity of the Installation Manual.  (*See* Young Aff. ¶ 3 (attorney affirmation merely stating that "Manufacturer Tri-tronics [sic] installation manual" was attached as Plaintiff's Exhibit 3).)  At most, Plaintiff may be relying on Dr. Pugh's deposition testimony, which, as noted above, indicated that Dr. Pugh obtained the Installation Manual via a Google search, rather than from Tri-Tronics directly.  (*See* Pugh Dep. Tr. at 50:1–5 (Dr. Pugh's testimony explaining that he "Googled the model of the [door re-opening device] and it provided the link to this document"); *see also* Pugh Aff. at 3 ("I obtained the [I]nstallation [M]anual . . . on-line [sic].").)  He also testified that he "guess[ed]" and "presume[d]" that the document he found came from Tri-

Tronics' website.  (Pugh Dep. Tr. at 50:1–5.)  And although it is undisputed that the Elevator's

door re-opening device was installed in *2001*, (Def's 56.1 ¶ 21; Pl's Resp. 56.1 ¶ 21), Dr. Pugh

asserted that it was "probable" that the Installation Manual, which had a *2011* copyright date, "or

something very similar to it, was available at the time of the installation," given that "[i]t [has]

exactly the same model [number], or if there was something different, they would have

change[d] the model number[,]" (Pugh Dep. Tr. at 50:10–51:1).  On this record—where Plaintiff

relies on her proffered expert's unsupported, unsubstantiated, and admitted conjecture—the

Court has little trouble in concluding that Plaintiff has failed to authenticate the Installation

Manual at this juncture; thus, the Court declines to consider the Installation Manual for purposes

of resolving the instant Motion.  *See, e.g.*, *Mingo v. Augustyn*, No. 19-CV-211, 2021 WL

2446856, at *3 n.8 (W.D.N.Y. June 16, 2021) (declining to consider certain video evidence when

considering a motion for summary judgment where "no one with personal knowledge attest[ed]

that it fairly and accurately depict[ed]" the interaction it was supposed to depict and the

proponent's "counsel merely state[d, without personal knowledge and] in conclusory fashion in

his declaration[,] that the video was 'taken of the events as set forth in [the proponent's]

complaint, with such video truly and accurately depicting such event'" (citation omitted)), *report

and recommendation adopted*, 2022 WL 224645 (W.D.N.Y. Jan. 26, 2022).[18]

---

[18] Notwithstanding this conclusion, the Court is mindful that experts can rely on "facts or
data" that "need not be admissible" so long as "experts in the particular field would reasonably
rely on those kinds of facts or data in forming an opinion on the subject."  Fed. R. Evid. 703; *see
also In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 561 (S.D.N.Y. 2004) (explaining that
"district courts must make an independent determination that the material in question is
sufficiently reliable for experts in the field to rely upon it and are not bound merely to accept
expert testimony based on questionable data simply because other experts use such data in the
field" (quotation marks omitted)).  Here, Plaintiff does not point the Court to anything in the
record that suggests that experts in Dr. Pugh's field would rely on documents like the Installation
Manual.  In any event, on this record the Court finds that the Installation Manual is not
sufficiently reliable for its proffered purpose.  *See In re Rezulin Prod. Liab. Litig.*, 309 F. Supp.

Turning to the opinions Plaintiff presumably relies upon to establish that Defendant had constructive notice of the alleged improper door re-opening device installation, Dr. Pugh opined that Defendant "should have noticed that the [door re-opening device] was mounted too high . . . and should have corrected th[at] defect." (Pugh Aff. at 4.)  Dr. Pugh later opined that Melendez was "ignorant of [the door re-opening device's] installation specifications, which thus prevent[ed him] from identifying the defect and correcting it."  (*See* Pugh Supp. Ltr. at 4.)  However, Dr. Pugh offers these opinions without any evidentiary support or reliance on authority.  (*See id.*; Pugh Aff. at 4.)  In other words, he merely provides his own ipse dixit statements to suggest that Defendant—an elevator maintenance contractor—should have assessed the door re-opening device that another company had installed in 2001 and that a separate independent agency had already determined was fully code compliant prior to the commencement of Defendant's maintenance contract, (*see* Def's 56.1 ¶¶ 21, 30; Pl's Resp. 56.1 ¶ 21), and that it should have been aware of the manufacturer's installation specifications for a device that it did not install approximately seventeen years after its installation, based on a manual that was dated ten years after that installation, (*see* Pugh Dep. Tr. at 50:1–51:1).  This is singularly unconvincing. Accordingly, the Court concludes that Plaintiff has failed to raise a genuine issue of material fact as to whether Defendant had constructive notice of the Elevator's alleged dangerous condition. *See Skidd*, 2010 WL 2834890, at *5 (explaining that "[w]here an expert's affidavit is vague, conclusory and factually unsupported, it fails to raise an issue of fact as to [an] elevator

---

2d at 562–63 (concluding that a proffered expert's reliance on an unpublished, non-final report "d[id] not comport with Rule 703" in light of numerous factors suggesting that the report's conclusion was unreliable).  As discussed above, the record is far from clear as to the provenance of the Installation Manual, (*see* Pugh Dep. Tr. at 50:1–51:1), and, more importantly, Dr. Pugh purports to rely on a document dated 2011, (*see* Installation Manual 17), for installation specifications for a door re-opening device that was installed ten years earlier, (Def's 56.1 ¶ 21; Pl's Resp. 56.1 ¶ 21).

company's liability" (quotation marks omitted)); *see also Swanson*, 2024 WL 967331, at *4

(granting summary judgment in favor of an elevator maintenance contractor on a negligence

claim in part because the plaintiff's expert had proffered an opinion that was "mere speculation

that a defect existed, and that [the d]efendant had actual or constructive notice of such a defect"

(citation omitted)); *Meade*, 2017 WL 6509259, at *7 (similar, and explaining that the plaintiff

"'may not rely on mere speculation or conjecture as to the true nature of the facts to overcome'

[a summary judgment] motion, as 'mere conclusory allegations or denials cannot by themselves

create a genuine issue of material fact where none would otherwise exist'" (quoting *Hicks v.

Baines*, 593 F.3d 159, 166 (2d Cir. 2010)); *cf. Nimely v. City of New York*, 414 F.3d 381, 396 (2d

Cir. 2005) ("[N]othing in either *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579

(1993)] or the Federal Rules of Evidence requires a district court to admit opinion evidence

which is connected to existing data only by the ipse dixit of the expert.  A court may conclude

that there is simply too great an analytical gap between the data and the opinion proffered."

(italics omitted) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997))); *U.G. by Nanema

v. United States*, No. 21-CV-2615, 2023 WL 3122702, at *3 (S.D.N.Y. Apr. 27, 2023)

(explaining that "ipse dixit reasoning is insufficient to create a triable issue of fact with respect to

negligence" (italics omitted)); *Gucci Am., Inc. v. Guess?, Inc.*, 843 F. Supp. 2d 412, 417

(S.D.N.Y. 2012) ("'Entirely conclusory' expert reports are not sufficient to ward off summary

judgment.").[19]

---

[19] Although Plaintiff has submitted an eleventh-hour "Expert Affidavit Supplement" from
Dr. Pugh in response to the instant Motion, that document provides no further information or
opinions with respect to what Defendant should have known concerning the Elevator's door re-
opening device, and therefore does nothing to change the Court's analysis.  (*See generally*
Young Aff. Ex. 8 (Dkt. No. 59-8).)

The Court's conclusion here is bolstered by Plaintiff's failure to put forth any evidence demonstrating how long the Elevator's alleged defect existed prior to the January 23, 2019 Incident.  "The absence of [such] evidence . . . constitutes a failure to establish the existence of constructive notice as a matter of law."  *Early*, 904 N.Y.S.2d at 369; *see also Nussbaum v. Metro-N. Commuter R.R.*, 994 F. Supp. 2d 483, 494 (S.D.N.Y. 2014) (same).[20]

In sum, Defendant's Motion is granted as to Plaintiff's traditional negligence claim because she has failed "to present evidence capable of showing that [Defendant] either created the [alleged] defect or had actual or constructive notice of th[at] defect."  *Swanson*, 2024 WL 967331, at *5.[21]

### 2.  Res Ipsa Loquitur

The Court next turns to Defendant's assertion that Plaintiff cannot seek to establish her negligence claim by relying on a res ipsa loquitur theory.  (Def's Mem. 20–23.)

"Res ipsa loquitur is a doctrine that allows two elements of negligence, duty of care and breach, to be inferred from the very nature of the accident, even without direct evidence of how any defendant behaved."  *Skidd*, 2010 WL 2834890, at *3 (italics omitted) (citing *Rossetti v. Bd.*

---

[20] To the degree that Plaintiff relies on *Merrick v. Macerich Co.*, 203 N.Y.S.3d 569 (App. Div. 2024), in connection with her arguments relating to constructive notice, the Court finds that reliance to be unavailing.  (*See* Pl's Opp'n 15.)  In *Merrick*, where the plaintiff was allegedly struck by "an unexpectedly closing door," the state appellate court held that the trial court properly denied a defendant's motion for summary judgment because that defendant "made an insufficient showing that it used reasonable care to discover and correct the defective condition of the elevator sensor" given that "[i]ts account history records lacked detail, and the testimony of its mechanic was not based on personal knowledge."  203 N.Y.S.3d at 571.  Putting aside the fact that the *Merrick* court did not expressly discuss notice—constructive or otherwise—*at all*, that case is plainly distinguishable; Defendant's "account history records" and the basis for Melendez's testimony are simply not challenged or at issue in this case.  *Id.*

[21] In light of its holding with respect to Defendant's lack of actual and constructive notice, the Court need not reach the remaining arguments raised by the Parties as to whether Plaintiff can establish the existence of a dangerous condition that ultimately led to her injury.

*of Educ. of Schalmont Cent. Sch. Dist.*, 716 N.Y.S.2d 460, 462 (App. Div. 2000)); *accord Linwood v. Schindler Elevator Corp.*, No. 16-CV-1020, 2019 WL 5722110, at *9 (S.D.N.Y. Jan. 25, 2019).[22]  Thus, the doctrine "'does not state a separate theory on which a plaintiff may recover for injury,' but rather 'amounts to nothing more than a common-sense appraisal of the probative value of circumstantial evidence.'"  *Ulerio*, 2014 WL 1303710, at *4 (quotation marks omitted) (quoting *Abbott v. Page Airways, Inc.*, 245 N.E.2d 388, 393 (N.Y. 1969)); *see also Harvey v. Permanent Mission of Republic of Sierra Leone*, 97 F.4th 70, 76 (2d Cir. 2024) ("[T]he doctrine of res ipsa loquitur does not constitute a separate cause of action." (italics omitted) (quoting *USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*, 681 F.3d 103, 105 n.6 (2d Cir. 2012))).

"In New York, a case may be committed to the jury on the theory of res ipsa loquitur only if the plaintiff demonstrates that (1) the event was of a kind which does not ordinarily occur in the absence of someone's negligence; (2) it was caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it was not due to any voluntary action or contribution on the part of plaintiff."  *Stone v. Courtyard Mgmt. Corp.*, 353 F.3d 155, 157 (2d Cir. 2003) (italics omitted) (citing *Corcoran v. Banner Super Market, Inc.*, 227 N.E.2d 304, 305 (N.Y. 1967)); *see also Ezzard v. One E. River Place Realty Co., LLC*, 8 N.Y.S.3d 195, 198 (App. Div. 2015) ("If a plaintiff establishes these [three] elements, then the issue of negligence should be given to a jury to decide[.]").  "A plaintiff 'need not conclusively eliminate the possibility of all other causes of the injury,' but must provide evidence that affords a rational basis for concluding that 'it is more likely than not' that the injury was caused by the defendant's

---

[22] The district court adopted the report and recommendation in *Linwood* by order dated April 15, 2019.  (*See* Order (Dkt. No. 97, 16-CV-1020 Dkt.).)

negligence.'" *Ulerio*, 2014 WL 1303710, at *4 (quoting *Kambat v. St. Francis Hosp.*, 678

N.E.2d 456, 458 (N.Y. 1997)).

Defendant does not argue that it lacked "exclusive control" over the Elevator and its door

re-opening device. *Stone*, 353 F.3d at 157.  (*See* Def's Mem. 20–23.)  Thus, the Court's analysis

will focus on the first and third elements necessary for proceeding under a res ipsa loquitur

theory.  "[C]onstru[ing] the record evidence in the light most favorable to [Plaintiff] and

draw[ing] all reasonable inferences in [her] favor[,]" *Torcivia*, 17 F.4th at 354, the Court

concludes that there are sufficient issues of fact to permit this case to be presented to a jury on

the theory of res ipsa loquitur.

### a.  First Element

With respect to the first element—whether "the event was of a kind which does not

ordinarily occur in the absence of someone's negligence[,]" *Stone*, 353 F.3d at 157—Defendant

argues that Plaintiff has failed to make the required showing because Defendant "can provide an

explanation as to how the accident can occur without any negligence on its part."  (Def's Mem.

20–21.)  In support of this argument, Defendant relies exclusively upon *Allen v. Woods

Management Co.*, 445 N.Y.S.2d 987 (App. Div. 1982), which it contends supports the

proposition that "if an accident can occur when [an] elevator functions properly, the first element

of res ipsa loquitor [sic] is not satisfied," (Def's Mem. 20 (italics omitted)).  However, a close

review of that case reveals that the majority opinion hardly discusses the doctrine of res ipsa

loquitur at all, except to note its disagreement with the dissent's focus on that doctrine, and does

not set forth any rule relating to the first element of the res ipsa loquitur analysis.  *Allen*, 445

N.Y.S.2d at 988–89 (affirming the trial court's decision to set aside a jury verdict in favor of the

defendants "as against the weight of evidence" where the plaintiff's "injuries occurred as a result

of the precise kind of event that should not occur if an elevator functions properly"). And in any case, Defendant completely fails to recognize the far more recent body of case law, which makes clear that plaintiffs "need not conclusively eliminate the possibility of all other causes of the injury" to prevail under a res ipsa loquitur theory. *See Ulerio*, 2014 WL 1303710, at *4 (quoting *Kambat*, 678 N.E.2d at 458); *accord Linwood*, 2019 WL 5722110, at *9; *see also Swanson*, 2024 WL 967331, at *5 (noting that "'the controlling law of th[e Second] Circuit' does not require [plaintiffs] to 'eliminate with certainty all other possible causes or inferences,'" (quoting *Meade*, 2017 WL 6509259, at *7–8)).

Contrary to Defendant's position, a reasonable jury could find that the January 23, 2019 Incident was the type of event that does not ordinarily occur in the absence of someone's negligence. New York courts have long held that "elevator malfunctions . . . 'do not occur in the absence of negligence, giving rise to the possible application of res ipsa loquitur.'" *Swanson*, 2024 WL 967331, at *5 (italics omitted) (collecting cases) (quoting *Ezzard*, 8 N.Y.S.3d at 198). To be sure, many of those cases involve elevator misleveling defects, which are not at issue here. *See, e.g.*, *id.* However, New York courts—and federal courts applying New York law—have also determined that the application of res ipsa loquitur is appropriate under circumstances similar to those presented in this case. *See, e.g., Linwood*, 2019 WL 5722110, at *1, 12 (recommending the denial of the defendant's motion for summary judgment as to the plaintiff's res ipsa loquitur theory where the plaintiff alleged that she was struck by the doors of an elevator with a defective door re-opening device); *see also id.* at *9 (collecting cases); *Merrick*, 203 N.Y.S.3d at 571 ("The law is well established that elevator malfunctions do not occur in the absence of negligence, and an unexpectedly closing door that fails to detect the presence of someone entering is not the type of event that ordinarily occurs in the absence of negligence[.]");

28

*Estevez v. SLG 100 Park LLC*, 189 N.Y.S.3d 53, 57 (App. Div. 2023) (vacating the trial court's decision granting summary judgment in favor of the defendant where the defendant admitted "that the elevator had an infrared sensor installed in the inner cab that should have prevented the elevator door from closing if a person or object was in its path" and "[t]he record contain[[ed] sufficient evidence that [the] plaintiff would have triggered this sensor had it been functional"); *Ianotta v. Tishman Speyer Props., Inc.*, 852 N.Y.S.2d 27, 28–29 (App. Div. 2007) ("[T]he facts warrant application of the doctrine of res ipsa loquitur, where plaintiff testified that the elevator doors were open for a second or two before she entered the elevator right behind her co-worker and that another co-worker had to pry the doors open to free her, and the safety edge on the elevator was not a rubber bumper that plaintiff could have touched or put pressure on to cause the doors to retract but a device that used infrared beams to detect the presence of passengers[.]" (citations omitted)); *cf. Stone*, 353 F.3d at 160–61 (vacating the district court's decision granting summary judgment as to res ipsa loquitur where the plaintiff claimed she was injured when a hotel's automatic doors closed on her); *Gonzalez v. Otis Elevator Co.*, No. 09-CV-8905, 2012 WL 993476, at *3 (S.D.N.Y. Mar. 26, 2012) (denying summary judgment as to res ipsa loquitur where the plaintiffs claimed an elevator caused their injuries by stopping abruptly).  Indeed, "'[c]ommon sense establishes that an adequately maintained elevator should not' have its doors closing on and striking its passengers severely enough to 'caus[e] injuries to its passengers.'" *Linwood*, 2019 WL 5722110, at *9 (quoting *Gonzalez*, 2012 WL 993476, at *3); *see also Stone*, 353 F.3d at 160 ("An injury [stemming from a plaintiff's passage through automatic doors] suggests a malfunction which in turn suggests neglect." (quotation marks omitted)).  And here, there is ample evidence that the Elevator had a door re-opening device that was meant to detect Plaintiff's presence, yet the Elevator's doors closed on Plaintiff's left foot anyway.  *See supra*

Section I.A.1–2.  Simply put, if Plaintiff's injury "was not the result of a malfunction attributable to negligence," Defendant "is free to offer evidence to that effect at trial."  *Stone*, 353 F.3d at 160.[23]

### b.  Third Element

As to the third res ipsa loquitur element—whether or not the injury-causing event "was [] due to any voluntary action or contribution on the part of plaintiff[,]" *Stone*, 353 F.3d at 157—Defendant contends that "Plaintiff [] cannot prove that the [January 23, 2019 Incident] is not due to any fault of her own."  (Def's Mem. 21.)  In support of this contention, Defendant places great weight on Plaintiff's testimony, which established that Plaintiff: "was standing a foot or two away from the [Elevator's] door just prior to the accident"; "paused," "[i]nstead of immediately entering the [E]levator when it arrived"; "was [] talking to [a] supervisor when she started walking into the [E]levator"; and "knew the [E]levator door[s] had already started to close" as she attempted to walk in.  (*Id.* at 22–23 (emphasis omitted).)  *See also supra* Section I.A.2. However, in arguing that it need only show "the possibility that [Plaintiff's] injury was caused by her own voluntary actions[,]" Defendant misstates the law.  (Def's Mem. 21 (quotation marks and citation omitted).)

---

[23] To the degree that Defendant relies on its liability expert's conclusions that "[n]o failure to maintain the elevator on behalf of Slade Elevator caused or contributed to the subject [January 23, 2019 Incident]," or that "Plaintiff failed to take the proper care while entering the elevator, [which] was the sole cause of the [January 23, 2019 Incident]," (Halpern Rep. at 11), such evidence only serves to underscore that there is a genuine dispute of material fact here, *see Linwood*, 2019 WL 5722110, at *10 ("[W]hile there is evidence before the [c]ourt that [the plaintiff's] injury could have been caused by something other than negligence (e.g., the timing of [the plaintiff's] exit from the elevator), whether the incident was of a kind 'that would not normally occur in the absence of negligence,' is at least a disputed material fact precluding summary judgment.").

"[T]he issue [under the third res ipsa loquitur element] is whether the plaintiff acted in some manner that affected the elevator and caused the [defect] to occur." *Ezzard*, 8 N.Y.S.3d at 199; *see also Ulerio*, 2014 WL 1303710, at *8 (denying the defendants' motion for summary judgment and, with respect to the third res ipsa loquitur element, noting that "the record is devoid of evidence that [the p]laintiffs *caused* the elevator accident" (emphasis added)). Thus, in cases involving plaintiffs that were struck by elevator doors equipped with door re-opening devices like the one at issue here, courts have determined that those plaintiffs could rely on the doctrine of res ipsa loquitur, notwithstanding the fact that there was evidence that they were walking through doors that were already closing. *See, e.g.*, *Linwood*, 2019 WL 5722110, at *12 (rejecting the argument that the plaintiff was "to blame for walking into doors that were already closing," in part because "the issue remain[ed as to] whether a properly functioning elevator door sensor would permit an elevator door to close on a person . . . regardless of how long the person took to exit"). For example, in *Barkley v. Plaza Realty Invs., Inc.*, where the elevator at issue "was equipped with an electric eye designed to retract if it encountered something in its path[,]" the court rejected the defendants' argument that the "plaintiff somehow caused the accident [at issue] . . . by trying to beat the elevator door[,]" explaining that the evidence "showed that plaintiff merely walked through a door that was designed to open automatically and not close until she was over the threshold, and to detect her presence in the path of the door." 49 N.Y.S.3d 105, 108 (App. Div. 2017). The court therefore concluded that "nothing [the] plaintiff did or did not do contributed to the accident." *Id.*

Here, as in *Barkley*, although Defendant points to some evidence that Plaintiff arguably contributed to the January 23, 2019 Incident by knowingly walking through the Elevator's closing doors, there is also evidence that she "merely [attempted to walk] through a door that

was designed to open automatically and not close until she was over the [Elevator's] threshold[.]" *Id.*; *see also supra* Section I.A.2.  Accordingly, on this record a reasonable juror could conclude that Plaintiff did not voluntarily contribute to her accident.

The Court is unconvinced by the decades-old cases Defendant relies upon in support of its position on this issue, which are plainly distinguishable.  (*See* Def's Mem. 21–22.) Defendant's reliance on *Feblot v. New York Times Co.*, 299 N.E.2d 672 (1973) is particularly unpersuasive.  (*See* Def's Mem. 22.)  There, the plaintiff alleged that she injured her shoulder when, "while she was entering the elevator, the door in the elevator cab, which was equipped with a rubber safety edge, suddenly closed and struck her . . . ."  *Feblot*, 299 N.E.2d at 673; *see also id.* at 676 (discussing testimony that a rubber safety edge is "a rubber cushion type substance . . . [that] is on the edge of the inside door of the elevator or the door that slides behind the outside door, which, when it comes into contact with the body of a person entering or leaving the elevator, prevents the door from closing any further and causes it to automatically reopen" (quotation marks omitted)).  The New York Court of Appeals determined that the plaintiff should not have been permitted to rely on the doctrine of res ipsa loquitur at trial, in part because "[e]ven if the doors started to close while she was partially in and partially out of the elevator, as she claimed at the trial, she still had it within her power to cause them to instantly reopen automatically by merely touching the rubber safety edge on the inside of the door with her hand[.]"  *Id.* at 678.  Here, of course, the Elevator was not equipped with a "safety edge" of that nature, which Plaintiff could have, but failed, to engage.[24]  Defendant relies more heavily on

---

[24] Similarly, the court in *Weeden v. Armor Elevator Co.* merely cited *Feblot* in support of the off-hand statement that "in the case of an embarking passenger who is struck by a closing elevator door[] that passenger's voluntary actions could have affected the happening of the accident[.]"  468 N.Y.S.2d 898, 904 (App. Div. 1983).  However, the *Weeden* court, which was deciding a case "predicated upon injuries sustained while riding in an automatic elevator which

*Graham v. Wohl*, 724 N.Y.S.2d 416 (App. Div. 2001), another case involving allegations that the plaintiff was struck by an elevator's door.  (*See* Def's Mem. 21–22.)  However, there, in accord with *Feblot*, the court affirmed the entry of summary judgment in the defendants' favor and concluded that the plaintiff could not rely upon a res ipsa loquitur theory, in part because, although the elevator at issue had a "safety bumper," the "plaintiff [did] not claim that she made any attempt to put pressure on [that] bumper such as might have caused the door to retract." *Graham*, 724 N.Y.S.2d at 417.[25]

Finally—and in contrast to Defendant's apparent assumption in its papers—it bears highlighting that Plaintiff's "own negligence, if any, would not defeat a claim under [a] res ipsa loquitur [theory]; rather, the issue of a 'plaintiff's comparative negligence [is] for the jury to decide.'" *Linwood*, 2019 WL 5722110, at *12 n.11 (third alteration in original) (quoting *Ezzard*, 8 N.Y.S.3d at 199).

In short, the Court concludes that there are genuine disputes of material fact as to the first and third res ipsa loquitur elements.  Accordingly, Defendant's Motion is denied insofar as Plaintiff seeks to establish her negligence claim under a res ipsa loquitur theory.

### 3.  Causation

Although Plaintiff may proceed to trial on its negligence claim under the doctrine of res ipsa loquitur, the Court must still consider Defendant's arguments relating to causation, because that doctrine does not absolve negligence plaintiffs from proving causation.  *See Ezzard*,

---

allegedly rose and fell suddenly[,]" ultimately concluded that the record before it was "bereft of evidence that any act by plaintiff contributed to the malfunction complained of[.]"  *Id.* at 899, 904.

[25] Beyond citing *Feblot*, *Graham*, and *Weeden*, Defendant does not meaningfully engage with the more recent case law discussed above.  (*See* Def's Mem. 21–22; Def's Reply 10–11.)

8 N.Y.S.3d at 199 ("Even when the doctrine is invoked, causation and comparative negligence are still issues for consideration[.]").  Defendant contends that Plaintiff has not adduced sufficient evidence that the January 23, 2019 Incident caused her alleged injuries to survive its Motion.  (Def's Mem. 24–27.)  As Plaintiff rightly points out, however, Defendant appears to base its causation arguments entirely on an inapposite body of case law.  (*See* Pl's Opp'n 21–22.)[26]  Specifically, with the exception of one case supporting the unremarkable proposition that negligence plaintiffs must establish causation, the cases Defendant relies upon each concern "serious injury" claims under New York's Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. Ins. Law § 5101 et seq., *not* negligence claims.  *See generally Perl v. Meher*, 960 N.E.2d 424 (N.Y. 2011); *Toure v. Avis Rent A Car Sys., Inc.*, 774 N.E.2d 1197 (N.Y. 2002); *Pietropinto v. Benjamin*, 961 N.Y.S.2d 461 (App. Div. 2013).  Thus, the Court concludes that Defendant's emphasis—over which it spills a fair amount of ink—on how "numeric percentage[s] can be used to substantiate a claim of injury," as well as Dr. Galeno's purported inability to "causally differentiate" between Plaintiff's injuries stemming from the January 23, 2019 Incident as against other injuries Plaintiff undisputedly suffered, misses the point entirely.  (*See* Def's Mem. 24–27; Def's Reply 11–12.)

Contrary to Defendant's contention concerning causation, to prevail on her negligence claim, Plaintiff must demonstrate that her asserted injury "proximately result[ed]" from Defendant's alleged negligence.  *Pasternack*, 59 N.E.3d at 490 (quoting *Solomon v. City of New York*, 489 N.E.2d 1294, 1294–95 (N.Y. 1985)).  "A defendant's negligence qualifies as a proximate cause where it is a substantial cause of the events which produced the injury." *Mellin*

---

[26] For unknown reasons, Defendant did not bother to address this concern in its Reply. (*See* Def's Reply 11–12.)

*v. Nerai LLC*, No. 21-CV-7789, 2024 WL 1075510, at *3 (S.D.N.Y. Mar. 12, 2024) (quoting *Mazella v. Beals*, 57 N.E.3d 1083, 1090 (N.Y. 2016)); *see also Brown v. New York*, 105 N.E.3d 1246, 1248 (N.Y. 2018) ("A breach proximately causes harm if it is a substantial factor in the plaintiff's injury.").

In response to Defendant's Motion, Plaintiff has proffered the opinion of her medical expert Dr. Galeno that the January 23, 2019 Incident caused injuries to her right knee and right shoulder. (*See* Bryan Decl. Ex. Q at 4; *see also* Def's 56.1 ¶¶ 74, 76; Pl's Resp. 56.1 ¶¶ 74, 76.) It is unclear to the Court what more Defendant expects Plaintiff to adduce to survive summary judgment under the appropriate legal standard.[27]   Accordingly, the Court concludes that Defendant is not entitled to summary judgment with respect to the causation element of Plaintiff's negligence claim, because Plaintiff has proffered sufficient evidence for a reasonable jury to conclude that the January 23, 2019 Incident proximately caused her right knee and right shoulder injuries.[28]

---

[27] The Court notes that Defendant did not move to preclude or otherwise challenge the admissibility of Dr. Galeno's opinions. (*See generally* Def's Mem.; Def's Reply.)  To the extent Defendant seeks to challenge the weight due to Dr. Galeno's opinions, the Court reiterates that "district courts may not weigh evidence . . . at the summary judgment stage.'"  *Parker*, 425 F. Supp. 3d at 183 (quoting *Jeffreys*, 426 F.3d at 551).

[28] The Court recognizes that Defendant requests that it dismiss this case against former Party SEC with prejudice. (*See* Def's Mem. 5 n.1; Def's Reply 4 n.1, 12.)  However, given that Defendant has failed to cite to any legal authority suggesting that it is appropriate for the Court to do so under these circumstances, the Court declines Defendant's invitation.

III.  Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted in part and denied in part.  Specifically, the Motion is granted with respect to Plaintiff's traditional negligence claim, but denied insofar as Plaintiff seeks to establish her negligence claim under a res ipsa loquitur theory.

The Court will hold a telephonic status conference on June 26, 2024, at 11:30 a.m.  The Clerk of Court is respectfully directed to terminate the pending Motion.  (*See* Dkt. No. 49.)  The Clerk of Court is also respectfully asked to update the docket to reflect the stipulated dismissal of SEC from this Action.  (*See* Stip. of Dismissal.)

SO ORDERED.

Dated:    June 12, 2024
              White Plains, New York

_____
            KENNETH M. KARAS
          United States District Judge